UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**LUTHER WILLIAMS,**
    **Plaintiff,**

v.   No. 05-2201

**JOHN HAMPTON, LUCUS ZEIEN,
AND DOUGLAS COUNTY JAIL,**
    **Defendants.**

**OPINION**

    Before the court are John Hampton's[1] summary judgment motion [47] and the plaintiff's response [45]. Plaintiff, Luther Williams ("Plaintiff") filed this action pursuant to 42 USC § 1983, alleging deprivation of his Fourteenth Amendment right as a pretrial detainee not to be subjected to excessive force in taking him into custody. Also, Plaintiff alleges that Hampton was deliberately indifferent to the Plaintiff's serious medical needs, in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff is currently an inmate at Vienna Correctional Center in Vienna, Illinois. Defendant Hampton is an officer employed by the Lake Land College Department of Public Safety.

    Specifically, plaintiff alleges that defendant Hampton was a police officer who deprived the plaintiff of a federal right and Hampton acted under the color of state law to deny the plaintiff such right when Hampton used excessive force against Plaintiff while effecting an arrest on October 14, 2003. Defendant asserts that the plaintiff cannot establish that Hampton applied force maliciously or sadistically to cause harm, or that the force applied by Hampton was excessive or unreasonable under the circumstances. Further, Plaintiff cannot establish that Hampton was deliberately indifferent to Plaintiff's serious injury or medical need and that summary judgment is appropriate and plaintiff's complaint must be dismissed.

**Standard**

    Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving

---

[1] John Hampton is the only remaining defendant.

party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

U.S.D.C. CDIL L. R. 7.1 provides that all motions for summary judgment and response and replies thereto shall comply with the requirements of this rule. Any filing not in compliance may be stricken by the court. The consequences for failing to comply are discussed thoroughly in *Waldridge v. American Hoechst Corp.*, 24 F. 3d 918 (7th Cir. 1994).

**Background**

Plaintiff's allegations relate to an incident on October 14, 2003, in which Hampton assisted in the apprehension and arrest of Plaintiff after a high speed car chase on Interstate 57 involving several different law enforcement agencies. Plaintiff's Complaint contains a "Statement of Claim" which alleges, *inter alia*, that on October 14, 2003, the following occurred:

> John Hampton kicked me in my back while I was standing with my hands raised. Knocked me to my knees; put his foot in my back pushing me to the ground. That's when I told him that I think he'd broken my ribs. He told me to shut up, and get up. After I told him that I couldn't get up – he and Officer Lucus Zeien grabbed me under my armpits and drug me to the squad car, and threw me in the back seat.

Plaintiff's Complaint further states that "I am seeking compensation for police brutality and

medical negligence."

## Undisputed Material Facts

1. On October 14, 2003, at approximately 8:30 - 9:00 p.m., plaintiff was traveling in a van on Interstate 57 which became involved in a police car chase. The plaintiff's van was traveling at a high rate of speed, and failed to stop despite being chased by police squad cars from several law enforcement agencies with their emergency lights and sirens activated. (*See* Transcript of plaintiff's deposition, p. 40, l. 6-15; 21-22; p. 43, l. 7-10, attached as part of Group Exhibit 1 [48]).[2]
2. Plaintiff's vehicle traveled both southbound and northbound on Interestate 57 in a reckless and evasive manner. (*See* Transcript of Plaintiff's Deposition, p. 44, l. 5-10, 13-14; p. 45, l. 9-12, attached as part of Group Exhibit 1 [48]).[3]
3. The plaintiff's van continued to evade apprehension even after sustaining a flat tire which was caused by a broadside collision with a semi-truck. (*See* Tranxcript of Plaintiff's Deposition, p. 46, l. 5; 7-13, attached as part of Group Exhibit 1 [48]).[4]
4. Hampton was one of the law enforcement officers involved in the chase, and Hampton assisted in the apprehension and arrest of plaintiff. (*See* Transcript of plaintiff's deposition, p. 61, l. 4-8, attached as part of Group Exhibit 1 [48]).[5]

---

[2] A: There was a line of police cars behind us. By the time the chase was over, there was a very long line of cars, police cars.
    Q: Were their lights flashing?
    A: Yes.
    Q: Approximately how many cars, police cars, do you think were involved in the chase?
    A: . . . I know there were like five counties involved, four or five counties.
    Q: Were the sirens also on?
    A: Yes.
    Q: . . . approximately how fast do you think the van was going?
    A: Very high speed, 90 and 100. 100 maybe. He was going extremely fast.

[3] A: . . . . He's (Plaintiff alleges that a second person was actually driving the van) going on the side of the road. And he's going around cars. You know what I mean? He's traveling with his lights off. You know what I mean? This guy is extremely, you know, dangerous . . . . And at two points in time he did strike an 18-wheeler. . .
    A: . . . and at one point in time he tried to squeeze between the two trucks, and the two trucks closed in on him. And eventually that's how they stopped him.

[4] A: The van busted a tire . . . . And when the van went on, he started increasing speed again with a flat tire. You could hear rubber hitting the side of the van and stuff like that. And it was a nightmare. And this guy just continued with his foot all the way to the floor.

[5] A: . . . I say John Hampton is actually the one. That knowledge come to me through the motion of discovery that Officer Zeien stated under oath that John Hampton was the one that

5. Hampton handcuffed plaintiff, and assisted defendant Lucas Zeien in transporting plaintiff to Officer Lucus Zeien's squad car. (*See* Transcript of plaintiff's deposition, p. 62, 14-21, attached as part of Group Exhibit 1 [48]).[6]
6. Plaintiff was taken to a hospital emergency room by defendant Lucas Zeien. An x-ray of plaintiff showed that he did not have fractured ribs, and he was prescribed Tylenol or Motrin for pain. (*See* Transcript of plaintiff's deposition, p. 63, l. 23, p. 64, l. 9, attached as part of Group Exhibit 1 [48].)[7]

### Discussion and Conclusion

First, the court notes that the plaintiff failed to follow any of the rules in USDC CDIL L. R. 7.1 when he responded to the defendants' summary judgment motion.

The court finds that Defendant Hampton used force that was objectively reasonable when analyzed under the Fourth Amendment's reasonableness standard. Plaintiff's excessive force claim is governed by *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), wherein the Supreme Court held that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. Excessive force is force applied "maliciously and saistically to cause harm," as opposed to force applied "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1,5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Relevant factors include the need for force, the relationship betwen that need and the force applied, the threat reasonably perceived by the officers, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7.

---

handcuffed me.

[6]Q: . . . . and then at that point, you said that he – he being John Hampton – and Lucas Zeien both got you up and put you in the squad car?
   A: Correct.
   Q: Whose squad car? Was it Lucas Zeien's squad car?
   A: Yes.

[7]A: By the time he – Officer Zeien got back in the car, I was in extreme pain. And I told him I needed to go to the doctor. And I said, "I think my ribs are broke." You know, and he called somebody on the phone or radio or something. And it was a sergeant of Mattoon; I'm not for sure. And they assisted him at the hospital for security reasons, I suppose.
   Q: Okay. That's when they took you to the hospital?
   A: Correct

The determination whether a police officer utilized excessive force is a fact-specific inquiry that depends on the totality of the circumstances surrounding the encounter. *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, *citing Tennessee v. Garner*, 471 U.S. 1, 8-9, 105 S.Ct. 1684, 85 L.Ed.2d 1 (1985). In addition, the reasonableness inquiry is an objective one: the "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. In assessing the reasonableness of a police officer's actions, courts must remember that "police officers are often forced to make split-second judgment – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. At 396-97.

In the present case, plaintiff asserts in his complaint that "John Hampton kicked me in my back while I was standing with my hands raised, knocked me to my knees, put his foot in my back pushing me to the ground." *See* Plaintiff's Complaint, "Statement of Claim," p.5. Factual disputes with plaintiff's claims are of no matter because courts must analyze an excessive force from the perspective of the police officer and assess its reasonablness objectively. *Smith v. City of Chicago*, 242 F.3d 737, 743-44 (7th Cir. 2001). Taken in the light most favorable to plaintiff, the facts show that defendant Hampton's use of force in effectuating the arrest of plaintiff was objectively reasonable.

From Hampton's vantage point, plaintiff's vehicle led police officers from several jurisdictions on a wild, multiple county high speed chase in a stolen vehicle on a major interstate at night. After hearing a general radio call for assistance, Hampton joined in the pursuit of plaintiff on Interstate 57 along with other law enforcement agencies, and Hampton observed plaintiff's vehicle travel both southbound and northbound on Interstate 57 in a reckless and intentionally evasive manner, endangering the health and safety of the public. Plaintiff's vehicle failed to stop, despite being followed by several police squad cars with sirens and emergency lights activated, and continued to purposefully evade apprehension even after sustaining a flat tire. Clearly, plaintiff demonstrated an intent to evade apprehension by (1) changing directions on Interstate 57 from southbound to northbound, (2) changing directions again on Interstate 57 from northbound to southbound, (3) attempting to pass between two semi-trucks, (4) striking one of the trucks causing a flat tire on the van, and (5) continuing to travel on despite the flat tire until losing control and coming to a stop in the grassy median in the center of the highway. Hampton approached plaintiff's vehicle with his gun drawn, ordered the plaintiff out of the van, and ordered plaintiff to get on the ground. Hampton holstered his gun and pushed plaintiff to the

ground with a knee in the small of plaintiff's back in order to handcuff plaintiff and maintain control of a still unstable crime scene.

Based upon these extraordinary, dangerous and uncertain circumstances, Hampton's perspective upon being the first officer to arrive on the scene was one of high alert and extreme

caution in attempting to subdue a suspect that reasonably posed an immediate threat to the safety of Hampton, other police officers and the public.  Hampton ordered the plaintiff out of the vehicle and quickly diffused the threat of unknown weapons or further attempts by plaintiff to flee by taking plaintiff to the ground and handcuffing him.  Hampton's use of force was objectively reasonable and was in no way excessive in light of the situation.  Accordingly, summary judgment is appropriate and this court must dismiss plaintiff's complaint.

In *Smith v. City of Chicago*, a motorist committed a traffic violation whereupon police officers followed the motorist and activated their siren to signal the motorist to pull over, which he did not do for twelve blocks.  242 F.3d 737, 744 (7th Cir. 2001).  When the motorist was finally stopped by marked police cars, the officers pulled the motorist out of the car, pinned his arms behind his back, slammed him against the hood of his car, and handcuffed him.  *Id*.  The court found that a reasonable officer would have thought that the motorist was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the officers than that needed for someone who committed only a minor traffic violation.  *Id*.  The court specifically found that the officers' use of force here was not high, let alone excessive.  *Id*.  Further, the court found that the motorist's claims that he did not commit a traffic violation, did not know the men following him were police officers, and did not hear the siren were not material to his substantive excessive force claim as they rested upon his view of the incident.  *Id*.

In this instant case, defendant Hampton's use of force was no more than that used by the officers in *Smith*, in more egregious circumstances than those in *Smith*.  Here, plaintiff led police officers from several law enforcement agencies on a wild high speed car chase through multiple counties at night on a major interstate highway in a stolen vehicle.  The chase involved plaintiff's vehicle weaving through traffic, driving on the shoulder of the highway, and only ended when plaintiff's vehicle collided with a truck while trying to maneuver between two tractor trailer trucks and eventually came to rest in the median of the highway.  Upon reaching the vehicle with another law enforcement officer and ordering plaintiff to exit the vehicle, defendant Hampton utilized the standard law enforcement technique of getting plaintiff to the ground quickly to gain control of the scene and ensure the safety of the responding officers.  Once plaintiff was handcuffed, defendant Hampton assisted another officer in placing plaintiff in a squad car thereby concluding his involvement in plaintiff's arrest.

Based upon the extreme and dangerous circumstances of a multi-county high speed car chase, a reasonable officer would have thought that plaintiff was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the officers than that needed for someone who committed only a minor traffic violation.  Just as the court found in *Smith*, Hampton's use of force in pushing plaintiff to the ground in order to gain control of the crime scene in tense, uncertain circumstances was not high, let alone excessive.

Another case directly on point with the instant matter is *Campbell v. Johnson*, 2005 WL 1514171 (W.D. Wis.).  In *Campbell*, a motorist led police officers from multiple jurisdictions on a six minute, four mile high speed chase.  A police officer initiated pursuit after his radar indicated that the motorist was driving more than double the speed limit (72 miles per hour in a 35 mile per

hour zone) at approximately 1:30 a.m. *Campbell*, *Id*. The chase ended when the motorist stopped his van half on a curb and half on the street. *Id*. The police officer approached the motorist's vehicle with his gun drawn, attempted to break the glass in the driver's side window of the motorist's van, forcibly removed the motorist from his vehicle by reaching across the motorist's body and grabbing his right arm and then pulled the motorist from the vehicle. *Campbell*, *Id*. The court found that given these facts, the officer had good reason to believe that the motorist posed a threat to the officer and the public. *Id*. "The force used by [the officer] was an objectivevly reasonable response to the threat he believed plaintiff presented. . . . Although plaintiff contends that his shoulder came out of its socket while defendant was pulling him from the van, defendant's actions were not excessive in relation to the threat he reasonably perceived." *Id*. [emphasis added]

In the instant case, this court finds, just as the *Campbell* court found in identical circumstances, that the force used by Hampton to effect the arrest of plaintiff was an objectively reasonable response to the threat that Hampton believed plaintiff presented. Hampton had good reason to believe that the plaintiff posed a threat to the officer and the public, and Hampton's actions were not excessive in relation to such threat. Accordingly, summary judgment is appropriate and is granted.

Defendant Hampton was not deliberately indifferent to Plaintiff's alleged serious injury or medical need, and Plaintiff cannot establish that he had an objectively serious injury that Hampton knew of or disregarded. Plaintiff also claims that Hampton was deliberately indifferent to Plaintiffs serious injury or medical need. Plaintiff's claim is without merit. The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need. *See Zentmyer v. Kendall County,* 220 F.3d *805, 810, (7'" Cir. 2000)* (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). This protection is extended to arrested persons and pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Id.* To prevail the detainee must satisfy an objective and a subjective element, namely that: (1) an objectively serious injury or medical need was deprived; and *(2)* the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *See Henderson v. Sheahan,* 1996 F.3d 839, *845* (7th Cir. 1999).

Under the first prong, an objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Zentmyer,* 220 F.3d at 810 (quoting Gutierrez *v,* Peters, I I I F.3d 1 364, 1 373 (7th Cir. I 997)). Under the second prong, it must be shown "that the official was aware of the risk and consciously disregarded it nonetheless," *Mathis* v. *Fairman,* 120 F.3d *88,* 91 (7th Cir. 1997)(citing Farmer v. Brennan, 51 1 U.S. 825, 840-42, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless. See *Salazar v. Cify of* Chicago, 940 F.2d 233, 238 (7" Cir. 1991).

Plaintiff's claim that Hampton was deliberately indifferent to his injury fails to satisfy the standard that an objectively serious injury or medical need was deprived. First, Plaintiff's

belief that his ribs were broken did not involve an injury that had been diagnosed by a physician as mandating treatment nor one that was so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Also, Plaintiff was taken to a hospital emergency room by another police officer, where radiology tests showed that there was no fracture of Plaintiff's ribs, and only Tylenol or Motrin was prescribed for pain. (See Emergency Room Report, attached to Plaintiff's Complaint as an exhibit). As such, no objectively serious injury or medical need was deprived by Hampton, and Plaintiff's claim that Hampton was deliberately indifferent to his injury fails. Moreover, Plaintiff's claim that Hampton was deliberately indifferent to his injury fails to satisfy the subjective standard that the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. Plaintiff claims that Hampton told him to "shut up and get up." Plaintiff then claims that he told Hampton he could not get up, whereupon both Hampton and Officer Lucus Zeien grabbed him under his armpits, drug him to the squad car and threw him in the back seat. However, the court notes that the Plaintiff was examined and x-rayed at a hospital emergency room and it was shown that Plaintiff did not have fractured ribs. Also, the Plaintiff himself contradicts his own factual version of the officers' response to his alleged inability to get up off the ground:

> Q: I said, "I can't get up. I think you broke my ribs." And then Lucas Zeien put his pistol in his thing, and the officer that handcuffed me, and they stood me up and made me walk to the squad car. And the officer that put the handcuffs on me opened the door, and they put me in the squad car.

(See Transcript of Plaintiff's Deposition, p. 55, 1. 19 - p. 56, 1. 1, attached as part of Group Exhibit 4 [48]). Plaintiff's deposition version of the facts is noticeably "kinder and gentler" than his Complaint version, which claims that the officers dragged him to the car and threw him in the backseat. Additionally, it is indisputable that: (1) Hampton's involvement in the apprehension and arrest of Plaintiff ended when Plaintiff was placed in the squad car[8], and (2) Plaintiff was taken to a hospital emergency room for examination and treatment. Plaintiff cannot show that Hampton knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it, especially where there were no obvious signs of injury

and the Plaintiff was taken for medical treatment. In short, Plaintiff cannot prevail on his claim that Hampton was deliberately indifferent to Plaintiff's serious injury or medical need.

In *Chapman v. Keltner*, 241 F.3d 842 (7th Cir. 2001), the plaintiff brought suit against arresting officers, alleging, infer *alia,* that by requiring her to step up into a transport van,

---

[8]*Q:* . . . After you were placed in Lucas Zeien's squad car, was that your last interaction with John Hampton?
A: Yes.
(See Transcript of Plaintiffs Deposition, p. 64, I. 11-14, attached as part of Group, Exhibit I 8]).

they were deliberately indifferent to her medical needs as a result of her recent bowel resection surgery, which caused her surgical incision to reopen and caused a hernia. *Id.* at 844-845. The court affirmed summary judgment for the officers, finding, "We agree with the district court that the officers requiring Chapman to step up so high, even with their assistance, may well constitute some form of negligence, but it does not constitute deliberate indifference." *Id.* at 846. "The district court also found that the officers were not deliberately indifferent because there is no evidence that the officers knew or reasonably should have known that Chapman's incision had opened." *Id.* Thus, even where officers were aware of a detainee's recent surgical injury, and the officers' actions resulted in further physical injury to the detainee, notwithstanding the detainee's protestations that their actions would cause further injury, the court found that the officers' actions did not constitute deliberate indifference where the officers did not consciously disregard the doctor's orders. In the instant case, Hampton was neither deliberately indifferent to Plaintiff's injury nor negligent in his response, and Plaintiff's cannot prevail on his claim. Plaintiff's claim fails because he cannot satisfy either prong of the required elements, namely that: (1) an objectively serious injury or medical need was deprived; and *(2)* the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. Accordingly, summary judgment is appropriate for the Defendant.

**Based on the foregoing:**

1. **The defendant's motion for summary judgment is granted [d/e 47]. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.**
2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

**Enter this   27th   day of March 2007.**

                        **/s/ Michael P. McCuskey**
                        _____
                            **Michael P. McCuskey**
                         **United States District Judge**